UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICARDO LOPEZ,

        Plaintiff,

   v.

CITY AND COUNTY OF SAN
FRANCISCO, et al.,

        Defendants.

Case No.  12-cv-06523-MEJ

**ORDER RE: MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 20

## INTRODUCTION

Plaintiff Ricardo Lopez, a Cable Car Operator with the San Francisco Municipal Transit Authority ("MTA"), brings claims under 42 U.S.C. § 1983 stemming from a verbal altercation with another MTA employee.  Pending before the Court is Defendants City and County of San Francisco ("the City"), York Kwan, and Mike Helms' ("Defendants") Motion for Summary Judgment, filed March 20, 2014.  Dkt. No. 20.  The Court held a hearing on the matter on June 26, 2014.  Having considered the parties' papers, relevant legal authority, and the record in this case, the Court GRANTS Defendants' Motion for the reasons set forth below.

## BACKGROUND

Lopez is Latino and was born in El Salvador.  Joint Statement of Undisputed Facts ("JSUF") ¶ 4, Dkt. No. 28.  English is not his first language, and he "speak[s] with an obvious Latin (or Spanish) accent."  Lopez Decl. ¶ 2, Dkt. No. 37.  As a Cable Car Operator, he conducts and inspects Cable Cars, transports passengers, makes stops as required, collects fares, issues transfers, and gives directional information.  ¶¶ 1-2.  Lopez has never applied for a different position or promotion within the MTA.  *Id.* ¶¶ 3, 25.

United States District Court
Northern District of California

**A.      Verbal Altercation and Discipline Proceedings**

On September 3, 2009, Lopez had an incident with Richard Katz, who works in the Receiver Department of the MTA.  *Id.* ¶ 5.  Each day at the end of their shift, cable car operators take their receipts and fares for the day to the receiver's office, where the receivers make sure that the amount of money the operator submits matches up with the amount of tickets he sold that day.  *Id.* ¶ 6.  According to Katz, he scolded Lopez for not submitting the correct amount of money.  Super Decl., Ex. D (Katz. Dep.) at 19:9-15.  Katz also claims that Lopez called him a "little shit" during the altercation.  JSUF ¶ 7.  According to Lopez, Katz spoke to him in a "threatening and harassing" manner.  *Id.* ¶ 8.

Lopez states that this was not the first time Katz yelled at him, so he went home after work and typed a letter describing the incident.  Lopez Decl. ¶ 3.  Lopez and Katz each submitted complaints about the other to the Cable Car Division Superintendent at the time, York Kwan.  Super Decl., Ex. B (Lopez Dep.) at 30:20-31:8; Ex. D (Katz. Dep.) at 31:6-32:20, Dkt. No. 23; Kwan Decl. ¶ 4, Dkt. No. 22.  Lopez submitted his complaint on September 4, 2009, the day after the incident.  Lopez Decl. ¶ 4.  Lopez states that he learned from another MTA employee that Katz submitted his complaint after him.  *Id.* ¶ 5.  Katz later testified that "if a report was to come out, and [Lopez] was probably going to write one, I was going to write one too, to - - obviously to protect my side of things."  Robinson Decl., Ex. 1 (Katz Dep.) at 33:10-16, Dkt. No. 41-1.

On September 14, 2009, Kwan prepared a written Notice of Proposed Recommended Disciplinary Action for a three-day suspension for Lopez based on his conduct during the altercation with Katz.  JSUF ¶ 9; Lopez Dep., Ex. C.  The letter also indicated to Lopez that a *Skelly* meeting had been scheduled to discuss this proposed discipline, at which time he would have an opportunity to respond to the charges.[1]  *Id.* ¶ 10.  The letter informed Lopez that he was entitled to have a union representative at the *Skelly* hearing, and provided his union representative's contact information.  *Id.* ¶ 11.

---

[1] A *Skelly* hearing refers to the due process meeting required under *Skelly v. State Personnel Bd.*, 15 Cal.3d 194 (1975), when a public employee faces a potential deprivation of his or her property interest as an employee.

Lopez subsequently took a leave from work for an unrelated workers' compensation injury from approximately September 10 to December 3, 2009. *Id.* ¶ 12.  Because of this, Lopez disputes when he received Kwan's notice.  In the parties' JSUF, both parties state that he received the notice on September 14, 2009.  JSUF ¶ 9.  Kwan also states that he sent the notice to Lopez on September 14, 2009.  Kwan Decl. ¶ 7.  However, in his declaration, Lopez states that he did not receive the notice until about December 3, 2009, after he returned from an unrelated three month workers' compensation injury.  Lopez Decl. ¶ 7; JSUF ¶ 12.

A *Skelly* meeting was held upon Lopez's return from his workers' compensation leave, on December 4, 2009.  JSUF ¶ 13.  Lopez had a chance to tell his side of the story regarding his altercation with Katz during the Skelly hearing.  *Id.* ¶ 35.  However, as Lopez states that he did not receive notice until about December 3, he states that he was not able to prepare for the initial hearing.  Lopez Decl. ¶ 9.  The City issued a Notice of *Skelly* Meeting Recommendation on December 4, 2009, upholding his three-day suspension.  JSUF ¶ 14.

Lopez grieved his suspension through the four-step process outlined by the Memorandum of Understanding ("MOU") between his union, Transport Workers' Union Local 250A, and the City.  Helms Decl. ¶ 3, Ex. A, Dkt. No. 21.  Although Lopez does not remember whether he engaged in Steps One or Two of the grievance process, the record indicates that Lopez submitted a written "Step 1" grievance form to Kwan on December 9, 2009, requesting that Kwan dismiss the charge.  Kwan Decl. ¶ 9, Ex. F.  Kwan denied the request on December 11, 2009.  *Id.*, Ex. F.  Neither side submitted any evidence regarding Step Two, but it is undisputed that Lopez participated in grievance Step Three, an informal hearing with the Labor Relations Manager (Defendant Mike Helms), and Step Four, an arbitration with an outside arbitrator.  JSUF ¶¶ 15-16.  As a result of the Step Three hearing, Helms reduced the three-day suspension to one day, and arbitrator Buddy Cohn upheld that one-day suspension after the Step Four arbitration hearing.  *Id.* ¶¶ 17, 36-37.

After receiving Lopez's complaint regarding Katz, Kwan referred Lopez to MTA's Equal Employment Opportunity Division.  Super Decl., Ex. E (Kwan Dep.) at 40:10-41:5; Kwan Decl. ¶ 6; Lopez Dep. 63:5-8.  Lopez subsequently met with MTA EEO Specialist Penny Si.  JSUF ¶ 18.

Katz was not disciplined for the altercation.  *Id.* ¶ 19.  Because Katz is an employee of the Receiver Department, Kwan was not responsible for disciplining him and therefore forwarded the complaint regarding Katz to his supervisor, Diana Hammons.  Kwan Decl. ¶ 5; JSUF ¶ 29.  It is undisputed that Kwan was responsible for disciplining Lopez and not Katz.  JSUF ¶ 29.  However, Lopez states he was never informed that he should have submitted his complaint to Katz's supervisor.  Lopez Decl. ¶ 6.

In his deposition, Lopez stated that his one-day suspension was on account of his race, because Mr. Katz "is a white person from here," and that Katz received better treatment than he did.  *Id.* ¶¶ 26-27.  He also stated that his one-day suspension was on account of his race, because Kwan was not impartial.  *Id.* ¶ 28.

**B.      Line Trainer**

Some cable car operators are given the opportunity to become a line trainer in addition to their regular job duties.  *Id.* ¶ 20.  Being a line trainer for a cable car operator means that occasionally, when a new operator is being trained, the line trainer takes the new hire on their route with them and trains them.  *Id.* ¶ 21.  This extra responsibility includes extra pay during the time spent training, but is not a promotion, a permanent raise, or a change in job classification at any point.  *Id.* ¶ 22.

Lopez alleges that he has requested or applied for the opportunity to be a line trainer a number of times over the years and this request has never been granted.  *Id.* ¶ 23.  In his deposition, Lopez stated that his failure to be made a line trainer was discriminatory because they never explained to him the reason why he was not chosen.  *Id.* ¶ 30.  He also stated that his failure to be made a line trainer was discriminatory because he does not know why they would deny him that opportunity.  *Id.* ¶ 31.  Lopez stated that he made requests of Kwan to be a line trainer both before and after he made protected speech complaints to the California Department of Fair Employment and Housing ("DFEH") and the United States Equal Employment Opportunity Commission ("EEOC"), but Kwan did not grant the requests any of these times.  *Id.* ¶ 34.  Lopez does not know if Kwan was aware that he filed the DFEH and EEOC complaints.  *Id.* ¶ 33.  Kwan states that he was not aware of the complaints until he learned about them in connection with this

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1  lawsuit.  Kwan Decl. ¶ 11.

2  **C.      Procedural Background**

3         Lopez filed his Complaint in San Francisco Superior Court on December 5, 2011.[2]

4  Compl., Ex. A to Not. of Rem., Dkt. No. 1.  Although not a model of clarity, Lopez's Complaint

5  alleges two causes of action, both entitled "42 USC §1983."  Compl. ¶¶ 37-44.  In both causes of

6  action, he alleges three violations of 42 U.S.C. § 1983[3]: (1) right to be free from discrimination

7  based on protected activity; (2) right to due process; and (3) right to Equal Protection of the law.

8  *Id.*  The Complaint states generally that the rights being violated are those guaranteed in the "First,

9  Fourth, and/or Fourteenth Amendments to the United States Constitution."[4]  *Id.* ¶ 40.  Lopez

10  claims that the following people at MTA were responsible for discriminatory conduct: York

11  Kwan, Mike Helms, David Banbury, Paul Wong, and someone named Amal.  JSUF ¶ 32.

12         Defendants removed the Complaint to this Court on December 26, 2012 (Dkt. No. 1), and

13  filed the present Motion for Summary Judgment on March 20, 2014 (Dkt. No. 20).  Lopez filed his

14  Opposition on May 4, 2014 (Dkt. No. 42), and Defendants filed their Reply on June 12, 2014

15  (Dkt. No. 46).

16                              **LEGAL STANDARD**

17         Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

18  that there is "no genuine dispute as to any material fact and [that] the movant is entitled to

19  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment

20  bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that

21  demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

22  317, 323 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v.*

23

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [2] The Complaint named Nathaniel Ford as a defendant, but Lopez subsequently dismissed him.
   Dkt. No. 8.
25  [3] "To establish a § 1983 claim, a plaintiff must show that an individual acting under the color of
   state law deprived him of a right, privilege, or immunity protected by the United States
26  Constitution or federal law."  *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008).
   [4] Although Lopez's Complaint references the Fourth Amendment, there are no related factual
27  allegations.  The Fourth Amendment provides: "The right of the people to be secure in their
   persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be
28  violated. . . ."  U.S. Const. amend. IV.  As Lopez has presented no evidence related to an
   unreasonable search or seizure, any such claim is DISMISSED.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. It is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## DISCUSSION

In their Motion, Defendants argue that Lopez's claims are time-barred because they arise out of his suspension for conduct which occurred on September 3, 2009. Mot. at 7. Since Lopez filed this case more than two years later, on December 5, 2011, Defendants maintain that his claims should be dismissed on that basis alone. *Id.* Even if Lopez's claims are not barred by the applicable statute of limitations, Defendants argue that his First Amendment claim fails because his complaint for failure to be chosen as a line trainer does not address a matter of public concern, he did not suffer an adverse employment action, and he cannot establish a causal link between his

1    alleged protected speech and his failure to be made a line trainer.  *Id.* at 7-9.

2         As to Lopez's due process claims under the Fourteenth Amendment, Defendants argue: (1)

3    his procedural due process claim regarding his suspension fails because he was provided with

4    notice and an opportunity to respond; (2) his substantive due process claim regarding his one-day

5    suspension fails because he has no fundamental right not to be disciplined in the workplace; and

6    (3) his due process claim regarding his failure to be made a line trainer fails because he had no

7    property right in the position.  *Id.* at 10-12.

8         As to Lopez's claim for violation of Equal Protection under the Fourteenth Amendment,

9    Defendants argue that Lopez has failed to show that he was treated differently from other similarly

10   situated individuals.  *Id.* at 13.

11        Even if Lopez were able to establish a violation of his constitutional rights or statutory

12   rights under § 1983, Defendants argue that Helms and Kwan are entitled to qualified immunity

13   because he fails to show that they acted unreasonably.  *Id.* at 15-16.

14        Finally, Defendants argue that the City is not liable under § 1983 for the conduct of its

15   employees under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because he cannot prove

16   that any of the conduct at issue is attributable to the City.  *Id.* at 16.

17   **A.    Requests for Judicial Notice**

18        As a preliminary matter, Defendants filed a Request for Judicial Notice in support of their

19   Motion ("RJN").  Dkt. No. 27.  Defendants request that the Court take judicial notice of: (1) San

20   Francisco Charter sections 1.101 (Rights and Powers), 4.100 (General), 4.126 (Departments –

21   General Provisions), 4.129 (Department of Administrative Services), 4.132 (Executive Branch

22   Reorganization), and 10.101 (General Powers and Duties); (2) San Francisco Administrative Code

23   Section 2A.30 (Department Heads); and (3) Civil Service Rules, Volume I, Miscellaneous

24   Classes, Rules 101, 103, 122, *et seq.*  RJN Exs. A-H.  Plaintiff has also filed a request that the

25   Court take judicial notice of a December 2011 calendar.  Pl.'s RJN, Dkt. No. 43.  Neither party

26   opposes the requests.

27        A judicially noticed fact must be one not generally subject to reasonable dispute that is

28   either generally known within this territorial jurisdiction or is capable of accurate and ready

United States District Court
Northern District of California

7

determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201.  Judicial notice of the San Francisco Charter and Administrative Code is appropriate as these items are documents of public record.  Fed. R. Evid. 201; *IMCO, L.L.C. v. Ford*, 2011 WL 5117265, at *4 (N.D. Cal. Oct. 27, 2011).  Judicial notice of the Civil Service Rules is also appropriate.  *Fontanilla v. City & Cnty. of San Francisco*, 2001 WL 513395, at *2 n.3 (N.D. Cal. Feb. 28, 2001); *Oliphant v. City & Cnty. of San Francisco*, 2010 WL 1875711, at *12 n.18 (N.D. Cal. May 7, 2010).  The authenticity of the December 2011 is also not challenged.  Accordingly, the parties' RJNs are GRANTED.

**B.     Statute of Limitations**

Defendants first argue that Lopez's claims are time-barred.  Specifically, because Lopez filed his Complaint on December 5, 2011, yet his claims arise out of his suspension for conduct which occurred on September 3, 2009, more than two years before he filed his Complaint.  Mot. at 7.  In response, Plaintiff argues that he did not learn of his proposed suspension until December 3, 2009.  Opp'n at 5.  Because December 3, 2011 fell on a weekend, he was unable to file his Complaint until the following Monday, December 5.  *Id.*

"In determining the proper statute of limitations for actions brought under 42 U.S.C. § 1983, [courts] look to the statute of limitations for personal injury actions in the forum state."  *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004).  Under California law, the statute of limitations for personal injury actions is two years.  *Id.*; Cal. Civ. Proc. Code § 335.1.  Therefore, the statute of limitations for Lopez's claims under 42 U.S.C. § 1983 is two years.  Federal law determines when a cause of action accrues and when the statute begins to run in an action under 42 U.S.C. § 1983.  *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994).  A claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action."  *Id.* at 802.

Here, although the verbal altercation occurred on September 3, 2009, his claims arise out of his subsequent suspension.  Although Kwan prepared the Notice of Proposed Recommended Disciplinary Action on September 14, 2009, Lopez took a leave from work for an unrelated workers' compensation injury from September 10 to December 3, 2009.  He states that he did not

8

1   receive the notice until about December 3, 2009, after he returned to work.  Thus, for purposes of

2   this Motion, the Court finds that Plaintiff's claim accrued at the latest by December 3, 2009.  *Id.*

3   And, because December 3, 2011 fell on a Saturday, Lopez timely filed his Complaint on the

4   following Monday, December 5, 2011.  Accordingly, Defendants' Motion is DENIED on this

5   ground.

6   **C.    First Amendment**

7            Lopez appears to contend that Defendants retaliated against him for engaging in protected

8   speech.  Compl. ¶¶ 22, 40, 44.  Specifically, Lopez alleges that he was not chosen as a line trainer

9   after January of 2010 because he filed EEOC and DFEH complaints.  Lopez Dep. 60:25-67:9.

10           Defendants argue that Lopez's First Amendment claim must fail because his speech did

11   not address a matter of public concern.  Mot. at 8.  Instead, Defendants maintain that Lopez's

12   complaints to the EEOC and DFEH regarding his one-day suspension were matters involving a

13   personnel dispute, and are therefore not protected by the First Amendment.  *Id.*  Lopez has offered

14   no argument in opposition.

15           To succeed on a First Amendment retaliation claim, Lopez has the initial burden to

16   demonstrate that: (1) he engaged in constitutionally protected speech; (2) the employer took

17   adverse employment action against him; and (3) the speech was a substantial or motivating factor

18   for the adverse action.  *Freitag v. Ayers*, 468 F.3d 528, 543 (9th Cir. 2006), *cert. denied*, 549 U.S.

19   1323 (2007).  If he meets this initial showing, the burden shifts to Defendants to demonstrate

20   either that, under the balancing test established by *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568

21   (1968), MTA's legitimate administrative interests outweighed Lopez's "First Amendment rights

22   or that, under the mixed motive analysis established by *Mt. Healthy City Sch. Dist. v. Doyle*, 429

23   U.S. 274, 287 (1977), it would have reached the same decision even in the absence of

24   [Lopez's]protected conduct."  *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 977 (9th

25   Cir. 2002).

26           Here, the Court finds that Lopez is unable to meet the first element of his prima facie case.

27   A plaintiff may prove that his speech was "protected" by showing that "the speech addressed an

28   issue of public concern," and "was spoken in the capacity of a private citizen and not a public

United States District Court
Northern District of California

9

employee." *Eng v. Cooley*, 552 F.3d 1062, 1070-71 (9th Cir. 2009) (citations omitted).  "Speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community."  *Id.* at 1070 (citation and internal quotations omitted).  Whether a public employee's speech addresses a matter of public concern is a question of law.  *Connick v. Myers*, 461 U.S. 138, 148 n.7.  This determination is made in light of the "content, form, and context of a given statement, as revealed by the whole record."  *Eng*, 552 F.3 at 1070 (citation and internal quotations omitted).

In the present case, Lopez's complaint regarding the altercation with Katz does not raise an issue of political, social, or other concern to the community.  Lopez does not deny that he spoke up in the capacity of a public employee – his complaints regarding the altercation and subsequent suspension are properly categorized as a personnel dispute that is not subject to First Amendment protection.  *See Eng*, 552 F.3d at 1070 ("speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern.") (citation and internal quotations omitted); *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004) (When an employee complains about his own job treatment, his speech does not address a matter of public concern.).  Thus, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."  *Connick*, 461 U.S. at 147.

Further, the context of Lopez's statements is telling.  Lopez filed his complaints in response to the suspension he received.  There is no evidence indicating that he spoke out about problems he now alleges until his own conduct came under scrutiny.  The relevant inquiry is the point of the speech in question—was it the employee's point to bring wrongdoing to light or was the point to further some purely private interest?  *Roth v. Veteran's Admin. of United States*, 856 F.2d 1401, 1406 (9th Cir. 1988); *see also Desrochers v. City of San Bernardino*, 572 F.3d 703, 714 (9th Cir. 2009) ("Private speech motivated by an office grievance is less likely to convey the

10

information that is a prerequisite for an informed electorate."). Thus, it appears that Lopez spoke not out of concern for the public, but instead out of his own self-interest. *Marr v. Anderson*, 611 F. Supp. 2d 1130, 1140 (D. Nev. 2009) (finding the plaintiff's speech, made in response to his employer's inspection of the plaintiff's aircraft and his flight preparedness, not of a public concern since there was no evidence the plaintiff spoke out about problems with the inspections until his own conduct came under scrutiny). Accordingly, the Court finds that Lopez did not engage in protected speech.

Based on this analysis, the Court finds that Lopez is unable to establish a prima facie case of retaliation. Accordingly, Defendants' Motion is GRANTED as to Lopez's First Amendment claim.

**D.      Due Process**

Lopez also brings claims under the Due Process Clause of the Fourteenth Amendment, which "protects individuals against the deprivation of liberty or property by the government without due process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Violations of the due process clause of the Fourteenth Amendment are properly advanced under 42 U.S.C. § 1983. *Collins v. City of Parker Heights, Texas*, 503 U.S. 115, 199-200 (1992). The Due Process Clause encompasses two types of protections: procedural fairness (procedural due process) and substantive rights (substantive due process). *Zinermon v. Burch*, 494 U.S. 113, 125-28 (1990).

1.      Procedural Due Process

Lopez alleges that his procedural due process rights were violated when MTA provided a biased *Skelly* hearing process and suspended him for one day. Compl. ¶ 31; Lopez Dep. at 68:22-72:22. He argues that, based on the "arbitrary and capricious manner of his suspension and limited ability to prepare," he "was not given the type of procedural due process that is afforded persons with a protected property interest in their public employment." Opp'n at 6. He also appears to allege that his due process rights were violated when he was not made a line trainer. Lopez Dep. at 83:4-84:2.

As to Lopez's suspension, Defendants argue that this claim should be dismissed because

1   Lopez received a *Skelly* notice, which included an explanation of MTA's evidence, and a chance

2   to tell his side of the story in the *Skelly* hearing.  Mot. at 11.  Defendants further argue that Lopez

3   went through the grievance process after being disciplined, including an informal Step Three

4   hearing with Mike Helms, who decreased his suspension from three days to one day, and an

5   arbitration hearing in front of an outside neutral arbitrator.  *Id.*  Defendants maintain that Lopez

6   "has therefore been afforded a good deal more than the level of due process required for a

7   termination, let alone for a one-day suspension."  *Id.*  As to the line trainer position, Defendants

8   argue that Lopez has no claim of entitlement and therefore no property right in the line trainer

9   opportunity.  Mot. at 12.

10      To establish a due process claim under § 1983, Lopez must show that a person acting

11  under the color of state law deprived him of a right, privilege or immunity protected by the

12  Constitution or federal law.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  A "procedural due

13  process claim hinges on proof of two elements: (1) a protectable liberty or property interest; and

14  (2) a denial of adequate procedural protections."  *Thornton v. City of St. Helens*, 425 F.3d 1158,

15  1164 (9th Cir. 2005).  The Ninth Circuit has consistently held that "some form of hearing is

16  required before an individual is finally deprived of a property interest."  *Mathews v. Eldridge*, 424

17  U.S. 319, 333 (1976) (citations omitted).  Thus, the fundamental requirement of due process is the

18  opportunity to be heard "at a meaningful time and in a meaningful manner."  *Armstrong v. Manzo*,

19  380 U.S. 545, 552 (1965).  Even in the context of a termination proceeding, the hearing "need not

20  be elaborate" – "[i]n general, 'something less' than a full evidentiary hearing is sufficient prior to

21  adverse administrative action."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)

22  (citing *Mathews*, 424 U.S. at 343).

23      a.    *Property Interest*

24      It is unclear whether discipline short of termination may be sufficient to constitute a

25  deprivation of property interest.  *See Gilbert v. Homar*, 520 U.S. 924, 929 (1997) (declining to

26  decide the issue).  The Ninth Circuit has held that a disciplinary transfer of a public employee

27  from one position to another does not constitute a deprivation of property interest sufficient to

28  trigger due process, noting that "[n]early all reported decisions dealing with section 1983 in the

United States District Court
Northern District of California

context of disciplinary proceedings against public employees arise out of discharges from public employment, and not mere disciplinary actions." *Stiesberg v. State of California*, 80 F.3d 353, 356 (9th Cir. 1996); *see also Civil Service Ass'n v. City and Cnty. of San Francisco*, 22 Cal.3d 552, 560 (1978) (short-term suspensions of five days or less fail to involve property rights which invoke due process requirements).  Further, even dismissal from government employment for reasons of incompetence or inability to get along with others does not implicate a liberty interest even if the charges are unfair or untrue.  *See, e.g., Portman*, 995 F.2d at 907–08; *Hayes v. Phoenix–Talent Sch. Dist. No. 4*, 893 F.2d 235, 237 (9th Cir. 1990).  Thus, the Court finds that Lopez's one-day suspension does not rise to the level of a constitutionally protected property interest.

The same is true of any claim for failure to be made a line trainer.  In *Nunez v. City of Los Angeles*, 147 F.3d 867, 871-72 (9th Cir. 1998), the Ninth Circuit ruled that an expectancy in a promotion is not a property interest.  Lopez has failed to provide any evidence that the line trainer opportunity is a promotion, let alone a property interest.

> *b.     Procedures*

Even assuming that Lopez's one-day suspension is sufficient to trigger due process protections, the Court finds that Defendants complied with procedural due process requirements.  If it is determined that due process concerns are implicated, a court must then determine what kind of process is due, and if sufficient process was provided.  *Morrissey v. Brewster*, 408 U.S. 480, 481 (1972).  Due process "is flexible and calls for such procedural protections as the particular situation demands."  *Id.*  At a minimum, procedural due process requires that the party whose rights are to be affected is entitled to be heard at a meaningful time and in a meaningful manner.  *Orloff v. Cleland*, 708 F.2d 372, 379 (9th Cir. 1983).

Here, the parties' dispute occurred when Lopez received notice of the *Skelly* hearing.  In the parties' JSUF, both parties state that he received the notice on September 14, 2009.  JSUF ¶ 9.  Kwan also states that he sent the notice to Lopez on September 14, 2009.  Kwan Decl. ¶ 7.  However, in his declaration, Lopez states that he did not receive the notice until about December 3, 2009, after he returned from an unrelated three-month workers' compensation injury.  Lopez

13

Decl. ¶ 7; JSUF ¶ 12.  Lopez argues that this limited his ability to prepare for the hearing.  Opp'n at 6.  Regardless, even assuming that Lopez did not receive notice of the December 4 *Skelly* hearing until December 3, the Court finds that the process as a whole provided ample protection for purposes of due process.

Lopez grieved his suspension through the four-step process outlined by the MOU between his union and the City.  Helms Decl. ¶ 3, Ex. A.  Although Lopez does not remember whether he engaged in Steps One or Two of the grievance process, the record indicates that Lopez submitted a written "Step 1" grievance form to Kwan on December 9, 2009, requesting that Kwan dismiss the charge.  Kwan Decl. ¶ 9, Ex. F.  Kwan denied the request on December 11, 2009.  *Id.*, Ex. F.  Neither side submitted any evidence specific to Step Two, but it is undisputed that Lopez had a chance to tell his side of the story regarding his altercation with Katz during the December 4 *Skelly* hearing.  JSUF ¶ 35.  It is also undisputed that Lopez was entitled to have a union representative at the *Skelly* hearing, and the record indicates that Union Representative Eric Williams did attend.  *Id.* ¶ 11; Kwan Decl., Ex. E.

Although Kwan upheld his initial recommendation of a three-day suspension, it is undisputed that Lopez subsequently participated in grievance Step Three, an informal hearing with the Labor Relations Manager (Defendant Helms), and Step Four, an arbitration with an outside arbitrator.  JSUF ¶¶ 15-16.  As a result of the Step Three hearing, Helms reduced the three-day suspension to one day, and arbitrator Buddy Cohn upheld that one-day suspension after the Step Four arbitration hearing.  *Id.* ¶¶ 17, 36-37.  The Court finds this process as a whole provided Lopez with more than an adequate opportunity to be heard at a meaningful time and in a meaningful manner.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Dinwiddie Const. Co. v. Dep't of Ins., State of Cal.*, 745 F. Supp. 589, 595 (N.D. Cal. 1990) (finding two administrative hearings ample protection for purposes of procedural due process); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1984) (a due process termination hearing need only provide the employee "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story"); *Cholewin v. City of Evanston*, 899 F.2d 687, 689-90 (7th Cir. 1990) (Due process does not grant the employee the right to examine and review all

14

1    documentary evidence.)

2        Plaintiff also appears to argue that the hearing process itself was biased.  "A biased

3    proceeding is not a procedurally adequate one.  At a minimum, Due Process requires a hearing

4    before an impartial tribunal."  *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 333 (9th

5    Cir. 1995).  In his Complaint, Lopez alleges that Helms, during Step Three of the grievance

6    process, disregarded exculpatory evidence and gave undue preference to evidence against Lopez.

7    Compl. ¶ 31.  However, it is undisputed that Lopez received at least three hearings, and the third

8    and final hearing was with an outside arbitrator.  JSUF ¶¶ 13, 16, 17.  Thus, even if the Court were

9    to find Kwan or Helms was not impartial, there is no due process liability because the final

10   decisionmaker was impartial.  *Walker v. City of Berkeley*, 951 F.2d 182, 184 (9th Cir. 1991)

11   ("[T]he failure to provide an impartial decisionmaker at the pretermination stage, of itself, does

12   not create [due process] liability, so long as the decisionmaker at the post-termination hearing is

13   impartial.");  *Ramirez v. Cnty. of Marin*, 2011 WL 5080145, at *12 (N.D. Cal. Oct. 25, 2011)

14   ("Because an independent post-termination hearing was available, plaintiff's allegations of bias at

15   the pre-termination stage do not state a due process claim.")

16        2.    <u>Substantive Due Process</u>

17        Lopez alleges that Defendants violated his substantive due process rights by denying him

18   the opportunity to serve as a line trainer.  Compl. ¶¶ 35, 40, 44.  He also appears to allege his one-

19   day suspension violated his right to pursue a chosen profession.  Opp'n at 8.  Defendants argue

20   that Lopez has no fundamental Constitutional right not to be disciplined in the workplace.  Mot. at

21   11.

22        Substantive due process "forbids the government from depriving a person of life, liberty,

23   or property in such a way that shocks the conscience or interferes with the rights implicit in the

24   concept of ordered liberty."  *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (internal

25   citations and quotations omitted).  In the employment context, there is "some generalized due

26   process right to choose one's field of private employment."  *Conn v. Gabbert*, 526 U.S. 286, 291-

27   92 (1999).  However, "the liberty interest in pursuing one's chosen profession has been recognized

28   only in cases where (1) a plaintiff challenges the rationality of government regulations on entry

United States District Court
Northern District of California

15

into a particular profession . . . or (2) a state seeks permanently to bar an individual from public employment." *Guzman v. Shewry*, 552 F.3d 941, 954 (9th Cir. 2009) (citations omitted).  Further, a public employer's violations of occupational liberty are limited to "extreme cases, such as a 'government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure.'" *Engquist v. Oregon Dept. of Agric.*, 478 F.3d 985, 998 (9th Cir. 2007), *aff'd on other grounds*, 553 U.S. 591 (2008).

Here, Lopez does not challenge any government regulations regarding entry into a particular profession.  Further, there is no evidence that Defendants foreclosed Lopez from pursuing a profession, let alone evidence of blacklisting him.  Thus, Lopez's one-day suspension and denial of his requests to be a line trainer do not rise to the level of fundamental rights under the Fourteenth Amendment.  Accordingly, the Court GRANTS Defendants' Motion as to Lopez's substantive due process claim.

**E.     Equal Protection**

In his Complaint, Plaintiff alleges that "[t]here is a general sense that [Katz] treats Latin/Hispanic operators poorly compared with his treatment of others."  Compl. ¶ 27.  He contends that MTA "is replete with instances warranting discipline or suspension far worse than the allegation leveled against Lopez by [Katz]," and gives the following examples:

> a.   One employee involved in many accidents never terminated;
> b.   One employee was "busted" with heroin, but was promoted; and
> c.   One employee failed two drug tests yet has not been significantly disciplined.

*Id.* ¶ 33.  He alleges that these examples "include employees who were not members of a protected class and never complained to management about the mishandling of money."  *Id.* ¶ 34.  Based on his deposition, in which he testified that he was treated differently than Katz, he appears to contend that Katz is a similarly situated individual for purposes of his Equal Protection claim. Lopez Dep. at 81:3-15.

In their Motion, Defendants argue that Katz (a receiver) and Lopez (a cable car operator) are employees of different divisions with different supervisors and, therefore, they are not

similarly situated individuals.  Mot. at 13.  Defendants further argue that cable car operators interact with the public regularly and particularly with tourists, and their behavior is therefore scrutinized at a higher level than that of receivers, who interact primarily with operators.  *Id.*  Defendants also argue that Lopez and Katz were not accused of the same level of rule violation – Lopez accused Katz of using "harassing and threatening language," while Katz accused Lopez of calling him a "little shit," which Defendants contend rises to the level of profane language.  *Id.*

In his Opposition, Lopez states that he "repeatedly alleges Defendants treated him differently based on his race."  Opp'n at 5.  He argues that "public employees are entitled under the Equal Protection Clause to be free of purposeful workplace harassment on the basis of protected status."  *Id.*  Lopez has also submitted the Declaration of Jose Membreno, a Latino male who works in the Cable Car Division, primarily as a grip-man.  Membreno Decl. ¶¶ 3-4, Dkt. No. 38.  Membreno attests that Latino operators receive discriminatory treatment from David Banbury, the Superintendent of Cable Cars, who is African-American.  *Id.* ¶ 4.  Specifically, Membreno states that when a black cable car operator's personal vehicle is ticketed, he assists the operator with "fixing" the parking ticket, but he will not assist Latino operators.  *Id.*  Membreno also states that he has heard Katz use profane language, including directing the word "bullshit" at him.  *Id.* ¶ 5.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005) (evidence of different treatment of unlike groups does not support an equal protection claim).

To state a § 1983 claim for violation of the Equal Protection Clause "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation and internal quotations omitted); *Washington v. Davis*, 426 U.S. 229, 239-40 (1976).  A plaintiff may satisfy this standard by alleging (1) that he was treated differently from others

similarly situated; (2) that this unequal treatment was based on an impermissible classification; (3) that the defendant acted with discriminatory intent in applying this classification; and (4) that he suffered injury as a result of the discriminatory classification. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); *Lam v. City and Cnty. of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012).

Here, the Court finds that Plaintiff has failed to present evidence that he was treated differently from others similarly situated.  "The first step in equal protection analysis is to identify the [defendants' asserted] classification of groups." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (citation and internal quotations omitted).  "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Id.* (citation omitted).  An equal protection claim will not lie by "conflating all persons not injured into a preferred class receiving better treatment" than the plaintiff.  *Id.* (citation omitted).

Lopez maintains that Defendants made a race-based classification, yet he has not offered evidence of racial discrimination beyond the observation that Lopez is Latino and Katz is white.  "[C]onclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment.  *Id.* (citing *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1360 (6th Cir. 1996)).  The fact that Lopez is Latino and Katz is not, "standing alone, does not mean that Defendants have discriminated on the basis of race."  *Id.* (citation omitted).  Katz and Lopez are employees of different divisions with different supervisors.  Operators interact with the public regularly, while receivers interact primarily with operators and other MTA employees.  Lopez has not shown that other operators were treated differently than him.  The Court finds they are not similarly situated for Equal Protection purposes.  *See Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004) (overruled on other grounds) (rejecting plaintiff's attempt to compare itself to a class of other similarly situated landowners because there was no evidence other landowners were as large, had same history of non-compliance, or same level of activity and thus plaintiff was not comparing "apples to apples").

Moreover, Lopez has not brought forth any evidence of other Latino operators being

United States District Court
Northern District of California

18

disciplined.  A plaintiff can allege an equal protection claim based on a "class-of-one theory." Under this theory, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  However, in *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 595 (2008), the Supreme Court held that the class-of-one theory "has no application in the public employment context."  *Id.* at 607.  The Court explained "that there is a crucial difference, with respect to constitutional analysis, between the government exercising the power to regulate or license, as a lawmaker, and the government acting as proprietor, to manage its internal operation."  *Id.* at 598 (internal citation and quotations omitted).  Indeed, the "government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer."  *Id.* (internal citation and quotations omitted).  The Court reasoned that the government, therefore, "has significantly greater leeway in its dealing with citizen employees than it does when it brings its sovereign power to bear on citizens at large."  *Id.*  In reaching its decision, the Court was guided by the "common-sense realization that government offices could not function if every employment decision became a constitutional matter ."  *Id.* (internal citation and quotations omitted).  Since Lopez has not brought forth evidence of other Latino operators being disciplined, the Court concludes that *Engquist* prohibits him from obtaining relief.

Based upon this analysis, the Court finds that Lopez has failed to show that Defendants acted with an intent or purpose to discriminate against him based upon membership in a protected class.  Accordingly, the Court GRANTS Defendants' Motion as to Lopez's Equal Protection cause of action.

**F.    *Monell***

In his Complaint, Lopez alleges that Defendants have a "*de facto* policy . . . [that] favors males born in the United States."  Compl. ¶ 14.  Lopez argues that, since Defendants Kwan and Helms are males born in the United States, they engaged in a pattern and practice that is part of an official policy of deliberate indifference to the constitutional rights of employees like himself.  *Id.* ¶¶ 13, 15, 16-18, 21.  In addition to the general allegations in his Complaint regarding favoring

United States District Court
Northern District of California

19

males born in the United States, Lopez submits additional evidence in support of his Opposition brief.  In his declaration, Jose Membreno states that he has heard Katz, who is white, use profane language, including using words like "wetback" to describe other Latino operators.  Membreno Decl. ¶ 5.  Membreno also declares that the Superintendent of Cable Cars, David Banbury, who is African-American, assists other African-Americans with "fixing" the parking tickets they receive when they have to park on the street, but he will not assist Latinos.  *Id.* ¶ 4.

In their Motion, Defendants argue that, even if Lopez was able to present specific and substantial evidence to survive summary judgment on his claims, the City is not liable on Lopez's § 1983 claim because he cannot prove that any of the conduct at issue is attributable to the City under *Monell*.  Lopez does not address the *Monell* claim in his Opposition.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort.  *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978).  A local government unit may not be held responsible for the acts of its employees under a respondeat superior theory.  *Id.* at 691.  Instead, the local government "itself must cause the constitutional deprivation."  *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir.1992).  Thus, a municipality may be subject to liability under § 1983 when the enforcement of a municipal policy or custom was the moving force behind the violation of a constitutionally protected right.  *Monel*, 436 U.S. at 663-64.  To state a claim under *Monell*, a plaintiff must plead "a constitutional right violation resulting from (1) an employee acting pursuant to an expressly adopted official policy; (2) an employee acting pursuant to a longstanding practice or custom; or (3) an employee acting as a final policymaker."  *Delia v. City of Rialto*, 621 F.3d 1069, 1081–82 (9th Cir. 2010) (citation and internal quotation marks omitted).

In order to survive summary judgment on a claim of liability based on an impermissible municipal policy, practice or custom, a plaintiff must point to an express policy, practice or custom, or provide evidence showing an inference that such policy, practice or custom exists. *Waggy v. Spokane Cnty.*, 595 F.3d 707, 713 (9th Cir. 2010).  "Only if a plaintiff shows that his injury resulted from a 'permanent and well settled' practice may liability attach for injury resulting from a local government custom."  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th

1     Cir. 1989).

2         As discussed above, the Court finds that Defendants are entitled to summary judgment on

3     Lopez's individual claims related to his suspension and the line carrier position.  Accordingly,

4     there is no constitutional violation and no basis to support Lopez's *Monell* claim related to these

5     allegations.  *See Aguilera v. Baca*, 510 F.3d 1161, 1174 (9th Cir. 2007) ("Since no violation of any

6     constitutional right occurred, we need not reach the claim against the County under *Monell* . . . .");

7     *see also City of L.A. v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) ("If a

8     person has suffered no constitutional injury at the hands of the individual [defendant], the fact that

9     the departmental regulations might have *authorized* [constitutional injury] is quite beside the

10    point." (emphasis in original)).

11        Even if the Court were to find a constitutional violation based on Lopez's evidence against

12    individual MTA employees, it would not be enough to establish municipal liability.  Generally,

13    "the actions of individual employees can support liability against a municipality under § 1983 only

14    if those employees were acting pursuant to an official municipal policy."  *Webb v. Sloan*, 330 F.3d

15    1158, 1164 (9th Cir. 2003) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)

16    (stating that "[t]he 'official policy' requirement was intended to distinguish acts of the

17    *municipality* from acts of *employees* of the municipality") (emphasis in original)).  Here, Lopez

18    points to no evidence of an official policy.  However, he can also allege City liability based on its

19    employees' actions under two alternative theories: (1) "if an employee commits a constitutional

20    violation pursuant to a long-standing practice or custom"; or (2) if "the person causing the

21    violation has final policymaking authority."  *Del Conte v. San Francisco Police Dept.*, 2009 WL

22    2871052, at *2 (N.D. Cal. Sep. 1, 2009) (quoting *Webb*, 330 F.3d at 1163-64).

23        As to an informal policy, Lopez must establish that Defendants' acts were undertaken

24    pursuant to a practice "so permanent and well settled as to constitute a 'custom or usage' with the

25    force of law."  *Monell*, 436 U.S. at 691; *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444

26    (9th Cir. 1989).  "Liability for improper custom may not be predicated on isolated or sporadic

27    incidents; it must be founded upon practices of sufficient duration, frequency and consistency that

28    the conduct has become a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d

United States District Court
Northern District of California

911, 918 (9th Cir. 1996) (citations omitted); *see also, Meehan v. Los Angeles Cnty.*, 856 F.2d 102 (9th Cir. 1988) (two incidents not sufficient to establish custom); *Davis v. Ellensburg*, 869 F.2d 1230 (9th Cir. 1989) (manner of one arrest insufficient to establish policy).

Here, Lopez alleges that Defendants Kwan and Helms are males born in the United States, and they engaged in a pattern and practice that is part of an official policy of deliberate indifference to the constitutional rights of employees like himself. Compl. ¶¶ 13, 15, 16-18, 21. However, the only evidence Lopez submits in support of this claim is that he was suspended while Katz was not. Lopez Decl. ¶¶ 11-12. Lopez has also submitted evidence that another Cable Car Operator, Jose Membreno, has observed the Superintendent of Cable Cars, David Banbury, who is African-American, assists other African-Americans with "fixing" the parking tickets they receive when they have to park on the street, but he will not assist Latinos. Membreno Decl. ¶ 4. This evidence does not rise to the level of a custom so permanent and well settled as to establish municipal liability. *See, e.g., Trevino*, 99 F.3d at 918-19 (finding the plaintiff's evidence fell "far short" of establishing a widespread custom for *Monell* purposes where city council had paid officers' punitive damages in eleven or twelve cases while the action was pending but in no cases up to the date on which the excessive force was allegedly used); *Meehan v. City of Los Angeles*, 825 F.2d 102, 106 (9th Cir.1988) (two incidents involving alleged unconstitutional harassment did not support the existence of a custom sufficient to establish municipal liability under *Monell*); *Henderson v. City and Cnty. of San Francisco*, 2006 WL 3507944, at *7, 10-11 (N.D. Cal. Dec.1, 2006) (plaintiffs, who were present and former inmates of the San Francisco county jail, failed to establish a triable issue of fact on *Monell* claim alleged that individual sheriff's deputy defendants violated their rights by using excessive force, despite alleging six incidents and submitting evidence of 17 additional grievances from other inmates).

Further, the fact that a city employee has some level of independent decision-making power does not render him a final policymaker for purposes of municipal liability. "If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability." *Praprotnik*, 485 U.S. at 126; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n.12 (1986). For municipal liability to attach, "the official

who commits the alleged violation of the plaintiff's rights [must have] authority that is final in the special sense that there is no higher authority."  *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001); *Zografos v. City & Cnty. of San Francisco*, 2006 WL 3699552, at *16 (N.D. Cal. Dec. 13, 2006) ("The authority to exercise discretion while performing certain functions does not make the official a final policymaker unless the decisions are final, unreviewable, and not constrained by the official policies of supervisors.") (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126-28 (1988)).  Lopez provides no evidence that any of the employees alleged to have violated his constitutional rights were a policy maker that made decisions that were final, unreviewable, and not constrained by the official policies of supervisors. Accordingly, this claim fails as well.  Based on this analysis, the Court GRANTS Defendants' Motion as to Lopez's *Monell* cause of action.

## CONCLUSION

Based on the analysis above, the Court hereby GRANTS Defendants' Motion for Summary Judgment.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: June 30, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge